UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIGGS TECHNOLOGY HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>VAGARO, INC.,<br><br>    Defendant. | Case No. 21-cv-07927-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 10 |

We are here on Defendant Vagaro, Inc.'s motion to dismiss Plaintiff Riggs Technology Holdings, LLC's Complaint on the ground that U.S. Patent No. 7,299,067 ("the '067 patent") is invalid under 35 U.S.C. § 101. The Court finds oral argument on this motion unnecessary and accordingly vacates the January 13, 2022 hearing in this matter.[1]

The '067 patent concerns "methods and systems for electronically providing education, instruction and/or training to remote end users." '067 patent at 1:19-21. The patent recites that company-provided training has historically required workers to physically go to a training site. *Id*. at 1:49-2:4. This can be inconvenient for the employees, and the company can incur the employee's travel and indirect expenses. *Id*. at 2:5-14. Existing technology has found a solution to this problem with online training over the internet, and the patent cites Continuing Legal Education classes for attorneys as successful examples of that. *Id*. at 2:15-25. Another solution is satellite training that offers satellite-based instruction at the trainee's place of business. *Id*. at 2:45-48. However, neither online training nor satellite-based training are perfect solutions. The former lacks feedback, may be too long and may have too many instructional materials; and the

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 9, 14.

1   latter may require specially equipped training rooms. *Id*. at 2:45-62.

2       In recent years, handheld devices have become increasingly popular for storing and
3   maintaining information. *Id*. at 3:25-28. Wireless capabilities allow handheld devices to remotely
4   interact with other computers and exchange data with them. *Id*. at 3:36-41.

5       The inventor of this patent has recognized the convenience that online training and
6   education have brought to busy workers and professionals since the advent of the internet. *Id*. at
7   3:59-61. He has also noticed that vast improvements in wireless technology can further enhance
8   existing offerings in online education and current training applications that are primarily focused
9   on a wired connection. *Id*. at 3:61-66. His invention, therefore, enables users of handheld
10  computers that are wirelessly connected to a network to engage in training, be evaluated on the
11  understanding gained by the user from the training, and allows for the reporting of the results of a
12  user's activity and evaluation to a course administrator. *Id*. at 4:7-14. He says that his invention
13  has developed new methods and systems for providing and managing the provision to and
14  execution of training by users via handheld wireless devices, as well as improvements for the use
15  of fixed, networked computers already deployed and familiar in the field of online education and
16  training. *Id*. at 4:20-25.

17      Helpfully, the parties agree on a couple of things. They agree that claim 1 is
18  representative, and neither side contends that claim construction is necessary before the Court can
19  evaluate patentability under section 101.

20      So, let's conduct the *Alice* analysis. First, the Court determines if the claims at issue are
21  directed to an abstract idea. *See Alice Corp. Pty. Ltd. v. CLS Bank Intern*., 573 U.S. 208, 217
22  (2014). If so, then the Court must determine what else is in the claims. *Id*.

23      Here, claim 1 is directed to the abstract idea of managing remote training. It claims a
24  method of managing training completed remotely at a handheld device, involving several steps:
25  the user transmits training data concerning the training taken by the user over a network to a
26  training server; the method receives identifying information for the user with the training data file;
27  it identifies the user; it authenticates the user; it records the training data in memory; and it locates
28  and determines the status of a training file (e.g., did the user complete it). The dependent claims

2

add methods of authentication (such as a password or biometric template), or providing the user or others with records of the status of the training. Independent claim 7 and its dependent claims are pretty much the same, as are independent claim 13 and its dependent claims. (Despite the specification's boast that the patent also improves fixed, networked computers, every claim concerns a method or system of managing training completed remotely at a handheld device.)

Managing remote training is an abstract idea. "[I]t is a method of organizing human activity," *Alice*, 573 U.S. at 220. In case the abstractness weren't clear enough from the claims themselves, the specification goes on to state that "'training' will be used herein primarily to describe *all forms of education, instruction and training* that the present invention can broadly apply." '067 patent at 4:34-36 (emphasis added). Claim 1 can be accurately paraphrased as: Use computers to track the training someone took, make sure it's the right person, and keep a record of the training status. Claims 2 and 3 are just more of using computers to make sure it's the right person. Claims 4, 5 and 6 say: use computers to provide records of the training to people. All of the other claims can also be rephrased as: use computers to manage training. The actual tasks involved in managing training contemplated by the patent are nothing more than identity verification, record keeping and providing records – which businesses have been doing forever. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018) ("'fundamental . . . practice[s] long prevalent in our system of commerce' are abstract ideas.") (citation omitted). Managing remote training is accordingly an abstract idea, similar to unpatentable ideas like risk hedging or intermediated settlement. *See Alice*, 573 U.S. at 220; *Intellectual Ventures I LLC v. Capital Bank One (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("The abstract idea here" – budgeting – "is not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and our court involving methods of organizing human activity.").

Riggs disputes this characterization of the patent, saying that it "has not attempted to claim training or even managing training" and that its true focus is on "remote communications and the concept of accessing training at anytime and anywhere." Opp. at 8. But none of the claims refer to training being available 24 hours a day, seven days a week (anytime) or everywhere on the surface of the Earth (anywhere). They refer to managing training completed remotely at a

1 handheld device. Riggs seems to acknowledge that *managing training* is abstract and seems to
2 contend that *completed remotely at a handheld device* is what saves the patent from abstraction.
3 And it is true that the claims here require the use of a handheld device, rather than merely any sort
4 of computer. But the patent does not purport to invent handheld devices, which it explains were
5 pre-existing technology. '067 patent at 3:25-41. Indeed, without using the word "generic," the
6 patent makes factual assertions that certainly come close to describing handheld devices as generic
7 computer equipment. *Id*. at 3:25-28 ("Hand held computing devices . . . are becoming
8 increasingly popular for storing and maintaining information."); *id*. at 3:48-52 (referring to several
9 brands of "advanced data- and video-enabled wireless communication devices currently available
10 in the market place"); *id*. at 3:57-58 (observing that personal digital assistants "are designed with
11 the novice and non-computer user in mind"). In any event, the Federal Circuit has "consistently
12 held . . . that claims are not saved from abstraction merely because they recite components more
13 specific than a generic computer." *BSG Tech*, 899 F.3d at 1286 (holding that considering
14 historical usage information while inputting data into a database is an abstract idea, even though
15 the type of database needed to perform the mechanism at issue was more specific than a generic
16 computer). Accordingly, the use of a popular device (a heldheld computer device) for its intended
17 purpose (use it remotely) does not save this patent from abstraction.
18 The Court then turns to step two of the *Alice* inquiry. Do the claims have an inventive
19 concept sufficient to transform the abstract idea into a patent-eligible application? *See Alice*, 573
20 U.S. at 221. The answer is no. Claim 1 – in fact, every claim in the patent – merely requires
21 "generic computer implementation," *id*., or at least equipment that is very close to generic. The
22 implementation requires a handheld device capable of receiving and transmitting data through a
23 network to and from a server, a server that stores and can provide records, and authentication
24 capability. There is nothing inventive about applying the abstract idea of managing remote
25 training to widely used and available computer equipment. *See Berkheimer v. HP Inc*., 881 F.3d
26 1360, 1370 (Fed. Cir. 2018) (holding claims lacked an inventive concept because they "amount to
27 no more than performing the abstract idea of parsing and comparing data with conventional
28 computer components").

4

Every claim in the '067 patent is invalid under section 101.  Vagaro's motion to dismiss is granted, and the complaint is dismissed without leave to amend.

**IT IS SO ORDERED.**

Dated: January 7, 2022

_____
THOMAS S. HIXSON
United States Magistrate Judge